

FILED

MAY 17 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 12-22391-B-13 |
| ROBERT CHARLES KELLER and FINLEY JONES KELLER, | DC No. SJS-006 |
| Debtor(s). | |

**MEMORANDUM AND ORDER DENYING MOTION FOR CONTEMPT AND SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY AND CONFIRMATION ORDER**

I. **INTRODUCTION**

Presently before the court is the Debtors' Motion for Order to Show Cause for Contempt of the Automatic Stay and Confirmation Order filed by debtors Robert Charles Keller and Finley Jones Keller. Debtors seek sanctions against Shellpoint Mortgage Servicing, Shellpoint's CEO Saul Sanders, Bank of New York Mellon fka the Bank of New York (collectively, "Respondents") for alleged violations of the automatic stay of 11 U.S.C. § 362(a)(6) which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Debtors also seek contempt sanctions under §§ 105(a) and 1327(a) for Respondents' alleged violation of the confirmation order. Debtors maintain Respondents violated the automatic stay and the confirmation order by reporting adverse credit information after they filed their chapter 13 petition on February 7, 2012.

The court has carefully reviewed the motion and opposition, each of their corresponding memorandum of points and authorities,

and all related declarations and exhibits. No reply was filed. The court also heard and has considered the statements and arguments of counsel made during the hearing held on April 5, 2016. And the court takes judicial notice of the docket in this case pursuant to Federal Rule of Evidence 201. This memorandum and order constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) made applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons explained below, the debtors' motion will be denied with prejudice.

**II.   JURISDICTION**

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. This matter is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. §§ 157(b)(2)(A), (G), (L), and (O). To the extent it may ever be determined to be a matter that a bankruptcy judge may not hear and determine without consent, the parties nevertheless consent to such determination by a bankruptcy judge. 28 U.S.C. § 157(c)(2). Venue is proper under 28 U.S.C. § 1409.

**III.  BACKGROUND**

On or about February 23, 2004, debtors executed a promissory note payable to Countrywide Home Loans in the original principal amount of $340,000. The note is secured by a deed of trust on

the debtors' residence.[1]

The debtors filed a fifth amended plan on or about August 28, 2012. The court confirmed the fifth amended plan on or about October 19, 2012. The confirmation order was entered on or about December 10, 2012.

The confirmed fifth amended plan provides for Bank of America (and thereby presumably Bank of New York Mellon/Bank of New York) in Class 1. It also provides for payments of that creditor's pre-petition arrears and maintenance of ongoing contractual installments due under the note and deed of trust by the chapter 13 trustee. The debtors have made all payments under the confirmed fifth amended plan. And according to the chapter 13 trustee's records, pre-petition arrears were cured by March 31, 2015. The chapter 13 trustee continues to make ongoing monthly payments on the note and deed of trust.

Mrs. Keller obtained a 3-bureau credit report (Experian, Equifax, Transunion) on January 19, 2016. That report apparently reflected the following:

> Payment History: 120 to 90 days late on all three bureau reports for March 2014 through December 2015.
>
> Payment Status: Account reported as "past due 150 days," "at least 120 days or more then four payments past due" and "120 days past due".
>
> Past Due Balance: All three bureau reports lists the account as $9,297 past due.
>
> Bankruptcy Status: Shellpoint failed to report that account included in bankruptcy.

---

[1] At some point the note and deed of trust were transferred to Bank of America N.A., and then to Bank of New York Mellon on or about January 12, 2012, and then to Bank of New York on or about August 16, 2014. Shellpoint is the loan servicer.

Mr. Keller also obtained a 3-bureau credit report (Experian, Equifax, Transunion) on January 25, 2016. That report apparently reflected the following:

> Payment History: 120 to 90 days late to all three bureaus for March 2014 through March 2015.
>
> Past Due Balance: All three bureaus report list account as $9,297 past due.

On or about January 27, 2016, debtors were denied credit in the purchase of a vehicle. The denial letter indicates that credit was denied based on information creditor received from Experian.

## IV. DISCUSSION

### A. The act of post-petition credit reporting is not, as a matter of law, a *per se* violation of the automatic stay.

The question before the court is a narrow one: Whether, as a matter of law, the mere act of reporting adverse credit information is a *per se* violation of § 362(a)(6). This somewhat conflicts with the motion in which the debtors state that "[b]y reporting misleading and inaccurate information on Debtors [sic] credit reports, Shellpoint and Bank of NY Mellon have willfully acted to collect on debt that is currently subject to the automatic stay and this court's order confirming the plan in violation of 11 U.S.C. §§ 105, 362 and 1327." [Dkt. 122 at 4:27-5:2]. However, during oral argument on April 5, 2016, debtors' counsel stated that accuracy of the credit information reported was irrelevant. Counsel stated that *any* post-petition credit report of adverse credit information is, as a matter of law, a *per se* stay violation under § 362(a)(6) regardless of whether the

information reported is accurate or not. Framed in that light, the court addresses only the narrow question presented.

In separate cases brought by the same law firm that currently represents the debtors in this case, the United States District Court for the Northern District of California has twice rejected the idea that credit reporting is a *per se* violation of the automatic stay. In Giovanni v. Bank of America, N.A., 2012 WL 6599681 (N.D. Cal. December 18, 2012), the debtor argued that federal bankruptcy laws, § 362(a) in particular, barred Bank of America from reporting negative credit information once she filed her petition.[2] The debtor in Mortimer v. J.P. Morgan Chase Bank N.A., 2012 WL 3155563 (N.D. Cal. August 2, 2012), made a nearly identical argument asserting that the automatic stay prohibited the reporting of any negative information while the case was pending.[3] The court in both cases rejected the debtors' arguments. Giovani, 2012 WL 6599681 at *5; Mortimer, 2012 WL 3155563 at *3. In Giovani, the court noted that the debtors

---

[2] "Giovanni first argues that federal bankruptcy laws barred BOA from reporting negative credit information once she filed her bankruptcy petition, so BOA's report was inaccurate and misleading. Opp'n, ECF No. 25 at 12. When a person files for bankruptcy, 11 U.S.C. § 362(a) imposes an automatic stay on collection activities. Giovanni argues that BOA's reporting late payments on her debts is a 'prohibited creditor shenanigan.' Opp'n, ECF No. 25 at 12[.]'" Id. at *5 (internal quotation omitted).

[3] "Mortimer claims, not that he made timely payments, but that Chase's reporting violated the letter and the spirit of 11 U.S.C. § 362. Mortimer argues that this provision of the Bankruptcy Code, which in general imposes a stay on creditors' collection activities, prohibits Chase from reporting any derogatory information arising while the bankruptcy petition was pending." Id. at *3.

cited no case in which a court found post-petition credit reporting alone to be a violation of the automatic stay. Giovani, 2012 WL 6599681 at *6. And in Mortimer, the court noted that nothing in the Bankruptcy Code prevents credit reporting while a bankruptcy case is pending. Mortimer, 2012 WL 3155563 at *3.

Not surprisingly, debtors attempt to distance this case from Giovani and Mortimer by suggesting that neither case included an analysis of the Bankruptcy Code, and both were decided in the context of the Fair Credit Reporting Act ("FCRA"). Although the latter point is accurate, there is little doubt that the notion of a *per se* violation based on post-petition credit reporting was raised and rejected in both Giovanni and Mortimer. Addressing the former point, the debtors cite § 362(b)(2)(E) which excepts from the automatic stay imposed under § 362(a) "the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act[.]" The debtors maintain the inclusion in § 362(b) of this single instance of credit reporting as an exception to § 362(a) means that all other instances of credit reporting are subject to and prohibited by § 362(a). Debtors' argument is without merit.

Mahoney v. Washington Mutual, Inc. (In re Mahoney), 368 B.R. 579 (Bankr. W.D. Tex. 2007), is instructive. In Mahoney, the court rejected the notion that, as a matter of law, the mere act of credit reporting could amount to a per se violation of the discharge injunction. Id. at 586. And while the court rejected that argument in the context of § 524, its reasoning is grounded in, and thus equally applicable to, § 362(a). Quoted at length

Case 12-22391    Filed 05/17/16    Doc 142

because of its significance, that reasoning is as follows:

> Treating the mere act of credit reporting, without more, as an act to collect on a debt would also fly in the face of section 1651c(a)(1) [sic] of title 15. Section 1651c [sic] mandates the exclusion of certain items from consumer credit reports. It reads, in relevant part:
>
>> Except as authorized under subsection (b) of this section, no consumer reporting agency may make any consumer report containing any of the following items of information:
>>
>>> (1) Cases under Title 11 or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years.
>
> 15 U.S.C. § 1681c.
>
> *In other words, Congress expressly contemplates the reporting of a bankruptcy case by credit bureaus for up to 10 years after the bankruptcy filing date. See id.; 11 U.S.C. § 301(b) (filing of a voluntary bankruptcy case constitutes an order for relief). It cannot be the case that Congress both allows ten years of reporting that an individual has had a case under title 11, while at the same time barring a creditor from simply reporting such information to a consumer reporting agency in the first place.*

368 B.R. at 586 at n.3 (emphasis added).

Mahoney's reasoning that Congress would not prohibit in one federal statute, *i.e.*, the Bankruptcy Code, that which it expressly allows in another, *i.e.*, the FCRA, is persuasive. Congress has historically harmonized the FCRA with the Bankruptcy Code. Indeed, the FCRA, as enacted in 1970, see title VI of Pub.L. 91-508, and amended in 1978, see P.L. 95-598, harmonized its references in § 1681c(a)(1) with the Bankruptcy Code. Moreover, the scope of the stay was well-developed both in 1970 and 1978. See In re Bradley, 38 B.R. 425, 427-28 (Bankr. C.D. Cal. 1984). And at both points in time, the scope of the

automatic stay would have been well known to Congress. U.S. v. Hunter, 101 F.3d 82, 85 (9th Cir. 1996). Yet, on at least two noted occasions, Congress made clear in § 1681c(a)(1) of the FCRA that the act of credit reporting could continue from and after the entry of an order for relief (and for a period of ten years thereafter) notwithstanding § 362(a) and, importantly, notwithstanding its knowledge of the scope of § 362(a). And because of that, there was no need for Congress to include in § 362(b) any general exception for what Congress understood was not subject to the reach of § 362(a) in the first instance.

To read § 362(b)(2)(E) as the debtors suggest, *i.e.*, that it creates a singular and exclusive exception to § 362(a) for credit reporting, would require the court to conclude that Congress intended to invalidate a significant provision of the FCRA, *i.e.*, § 1681c(a)(1), through and with an amendment to the Bankruptcy Code, *i.e.*, § 362(b)(2)(E). Not only is that an absurd result, but, that conclusion is wholly inconsistent with Congress' historical efforts to ensure that § 1681c(a)(1) of the FCRA is consistent with the Bankruptcy Code.

A better understanding of § 362(b)(2)(E), and one consistent with Congressional efforts to harmonize the FCRA and the Bankruptcy Code, is that § 362(b)(2)(E) was added through BAPCPA in 2005 to give <u>parents</u> asserting rights under § 1681s-1 of the FCRA where those rights did not previously exist. In other words, whereas § 1681s-1 of the FCRA speaks of credit reports that include overdue support information received from or verified by a state or local agency, under § 362(b)(2)(E) such reports may now include information received directly from a

parent to whom overdue support is owed.  In that respect, § 362(b)(2)(E) is an expansion of the existing credit reporting exclusion to § 362(a) recognized in § 1681c(a)(1) of the FCRA.

In re Sommersdorf, 139 B.R. 700 (Bankr. S.D. Ohio 1991), cited by the debtors, does not require a contrary result.  In fact, the court does not find Sommersdorf at all persuasive and declines to follow it for several reasons.  First, Sommersdorf did not consider the interplay between the FCRA and the Bankruptcy Code discussed above.  Second, Sommersdorf's *per se* analysis has been rejected or largely not followed.  See Mahoney, 368 B.R. at 586 (rejecting as support for *per se* violation of discharge injunction); In re Burkey, 2012 WL 5959991 at *4-5 (Bankr. N.D. N.Y. November 28, 2012) (rejecting as support for *per se* violation of co-debtor stay); see also In re Stacker, 2011 WL 182846 (Bankr. S.D. Ill. January 20, 2011); In re Gordon, 2000 WL 713742 (Bankr. E.D. Pa. May 1, 2000); In re Thistle, 1998 WL 35412015 at 6-7 (Bankr. E.D. Va. July 17, 1998).  And third, the weight of what little authority exists correctly recognizes that act of credit reporting alone, even reporting of adverse information, is not a *per se* stay violation.  See Hickson v. Home Federal of Atlanta, 805 F.Supp. 1567, 1573 (N.D. Ga. 1992), aff'd, 14 F.3d 59 (11th Cir. 1994) (holding that a legitimate report to a credit agency regarding a debtor's indebtedness, even if done post-petition, is not a stay violation and reasoning that § "362 contains no language prohibiting creditors or any other party from making legitimate reports to credit agencies regarding parties that have filed for bankruptcy."); Burkey, 2012 WL 5959991 at *4; In re Smith, 2000 WL 33710884 at *4 (Bankr. D.S.C.

2000) (rejecting debtor's argument that post-petition credit report of negative credit information violated § 362(a)(6), noting other provisions of federal law permitted reporting, and concluding reporting was not an act to collect because it did not extract payment even if it facilitated it); see also <u>Abeyta v. Bank of America N.A.</u>, 2016 WL 304308 (D. Nev. January 25, 2016).

In sum, answering the sole question before it, the court concludes that the mere act of reporting adverse credit information after an order for relief is entered is not, as a matter of law, a per se violation of § 362(a). Therefore, the debtors' request for sanctions against Respondents under § 362(k) based on a purported violation of § 362(a)(6) by continuing to report credit information after the debtors filed their chapter 13 petition will be denied with prejudice.

    B.    <u>Respondents' post-petition credit reporting did not violate the confirmation order.</u>

Debtors also argue that Respondents' post-petition credit reporting violated the confirmation order. The court disagrees.

A violation of the confirmation order invokes § 1327(a) and may be remedied by a contempt order under § 105. See <u>In re Dendy</u>, 396 B.R. 171, 179-80 (Bankr. D.S.C. 2008) (citation omitted). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors *violated a specific and definite order of the court*." <u>Renwick v. Bennett (In re Bennett)</u>, 298 F.3d 1059, 1069 (9th Cir. 2002) (emphasis added).

The court order at issue here is the confirmation order.

The problem with the debtors' argument is that the confirmation order does not require Respondents to report - or not report - anything. In other words, it neither directs nor prohibits credit reporting. On that matter, both the confirmed plan and the confirmation order are silent.

The debtors correctly note that § 2.08(b)(5) of the confirmed plan states that the "[p]ost-petition payments made by Trustee and received by the holder of a Class 1 claim shall be *applied* as if the claim were current and no arrearage existed on the date the case was filed." (Emphasis added). From that provision, the debtors maintain the confirmed plan requires "Shellpoint, its heirs and assigns, to (1) *report* all timely made post-petition payments as being current as though no default existed[.]" (Emphasis added). The Debtors read too much into the language of the confirmed plan.

In order to reach the conclusion the debtors' suggest, the court has to infer a nexus between the application and reporting of payments. In other words, the court has to read into the confirmed plan what the confirmed plan does not expressly state. That means - at least with respect to credit reporting - the debtors' confirmed plan is not direct and specific. And "[w]ithout a specific command in the plan for [Respondents] to [act], the Court cannot find that these parties have committed an act of contempt." Dendy, 396 B.R. 181.

In sum, the debtors may have a remedy if Respondents' post-petition reporting does not match Respondents' application of debtors' post-petition payments under the confirmed plan. However, in this case, that remedy is not under the Bankruptcy

Code and it certainly is not for contempt under § 105(a) through § 1327(a). Accordingly, the debtors' motion to hold Respondents in contempt under § 105(a) for violation of the confirmation order through § 1327(a) will also be denied with prejudice.

## V. CONCLUSION

Based on the foregoing, the court finds and concludes that post-petition credit reporting is not, as a matter of law, a *per se* violation of the automatic stay. The court also finds and concludes that, in this case, Respondents' post-petition credit reporting did not violate the confirmation order under § 1327(a) and Respondents are not subject to contempt under § 105(a). Therefore,

IT IS ORDERED that the debtors' Motion for Order to Show Cause for Contempt of the Automatic Stay and Confirmation Order [Dkt. 122] is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that the continued hearing set for May 17, 2016, at 1:00 p.m. is VACATED.

Dated: May 17, 2016.

_____
UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Scott J. Sagaria
2033 Gateway Place, Floor 5
San Jose CA 95110

Behzad B. Mohandesi
633 W 5th St #2800
Los Angeles CA 90071